UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION



FILED

JAN 0 8 2007

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

DEPUTY CLERK

| | |
|---|---|
| RICHARD R. GALVAN,<br>    Plaintiff,<br><br>v.<br><br>RAIL HEAD CLUB, JOHN C.<br>BAINTER, NORWEST BANK<br>AND WELLS FARGO BANK,<br>    Defendant. | No. SA-06-CA-0540-WRF |

## ORDER GRANTING MOTION TO REMAND

BEFORE THE COURT is Plaintiff's Motion to Remand, filed on July 3, 2006 (Docket No. 4). Defendant has not filed a response to the Motion, however, it has fully set forth its position in its Petition for Removal and in its attorney's affidavit attached thereto. The Court appreciates the good work of both sides. Plaintiff's Motion to Remand hereby is GRANTED.

### Factual and Procedural Background

Plaintiff originally filed this action in the 37th Judicial District of Bexar County, Texas, on May 30, 2006. Defendant, Wells Fargo Bank, N.A. ("Wells Fargo") filed a notice of removal in this Court on June 21, 2006, based on diversity of citizenship jurisdiction, under 28 U.S.C. § 1332(a). Plaintiff moved to remand on July 3, to which Defendant has not filed a response.

As set out in Plaintiff's Original Petition, Plaintiff is a full-time employee of Union

Pacific Railroad Company ("Union Pacific"). As such, he purchased unemployment insurance provided through the Rail Head Club, a company "owned and operated by railroaders" which is underwritten by Norwest Bank, which merged with Wells Fargo Bank in November 1998.[1] Plaintiff claims that he contracted with and paid premiums to the Rail Head Club for insurance in the event of work suspensions. However, Plaintiff claims that upon being suspended, the Rail Head Club refused to provide coverage. It is not clear from the face of the petition the number of days for which Plaintiff was suspended and is claiming coverage, however, the policy provides for coverage of "reimbursement of $200.00 per day for each day of dismissal or suspension, not to exceed 180 calendar days, and not to exceed $6,000.00 per month", provided membership fees are in good standing.[2] In conjunction therewith, for "Violation of Rule "G" (GCOR 1.5) and Insubordination" the Rail Head Club policy provides reimbursement at $100.00 per day for each day of dismissal or suspension, not to exceed 30 days, and not to exceed $3000.00, and only on a one-time allowance basis.[3]

Wells Fargo claims that the amount in controversy exceeds $75,000.00 because "the maximum a member would be entitled to receive under this 'membership' if he were suspended would be $36,000.00."[4] Wells Fargo argues, however, that in addition to actual damages, Plaintiff seeks to recover attorneys fees and exemplary damages, and attaches an

---

[1] Def.'s Notice of Removal, Pl.'s Original Pet. at 22 (Docket No. 1-1).

[2] *Id.* at 21.

[3] *Id.*

[4] Def.'s Notice of Removal at 2 (Docket No. 1-1).

affidavit of its attorney, Mr. S. Mark Murray ("Mr. Murray") that damages "would exceed $50,000.00 and could be much higher."[5]

## Discussion

A defendant may seek to remove any state-court action to federal court if that case originally could have been filed in federal court.[6] Diversity jurisdiction is a proper basis for removing an action to federal court.[7] In order for a federal court to have proper subject matter jurisdiction based on diversity, the party seeking removal must prove two elements: (1) complete diversity exists between the parties such that no plaintiff and no defendant are citizens of the same state; and (2) the amount in controversy satisfies the minimum federal jurisdictional amount of $75,000.00.[8] In addition to demonstrating that a jurisdictional basis for removal exists, the moving party must also prove that the parties complied with the requirements of the removal statute.[9] Further, courts are to construe removal statutes narrowly, with any doubts resolved against removal.[10]

It is well-settled that the amount in controversy for jurisdiction purposes is measured

---

[5] *Id.*

[6] *See* 28 U.S.C. § 1441(a) (2002).

[7] *Id.* § 1332(a) (2005).

[8] *Id.; see also Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996) (explaining complete diversity); *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988), *aff'd* 503 U.S. 131 (1972) (explaining the burden of proof for removal (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92 (1921)).

[9] *Willy*, 855 F.2d at 1164; 28 U.S.C. § 1446 (1996) (stating the procedures for removal).

[10] *Id.*

by the direct pecuniary value of the right that the plaintiff seeks to enforce or protect or the value of the object that is the subject matter of the suit.[11] In the Fifth Circuit, two distinct burdens of proof are used for determining amount in controversy depending on whether the action originated in federal court, or was removed thereto.[12] The federal courts have developed the legal-certainty test for actions that originate in the federal courts.[13] The legal-certainty test does not apply, however, in a remand situation or where the plaintiff has alleged an indeterminate or ambiguous amount of damages.[14] In this latter situation, the defendant must demonstrate by a preponderance of the evidence that the value of the plaintiff's claim meets the jurisdictional requirement, unless the plaintiff could then show with legal certainty that the value of his or her claim is actually below the jurisdictional requirement.[15] Thus, if the defendant can show by a preponderance of the evidence that the amount in controversy meets the jurisdictional minimum, a federal court would have proper jurisdiction over such

---

[11] *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333 (1977); *Seaboard Fin. Co. v. Martin*, 244 F.2d 329 (5th Cir. 1957); *Burks v. Texas Co.*, 211 F.2d 443 (5th Cir. 1954).

[12] All federal circuits recognize a distinction in the burdens of proof based on whether an action originated in federal court, or was removed. The Fifth Circuit recognizes two such distinctions. *See e.g., St. Paul Reinsu. Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998); *DeAguilar v. Boeing*, 47 F.3d 1404, 1409-1410 (5th Cir. 1995).

[13] 14B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure, Civil § 3702 at 17 (1998) [hereinafter Wright & Miller].

[14] *Id.* at 26.

[15] *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1411(5th Cir. 1995), *certiorari denied* 116 S.Ct. 180, 516 U.S. 865, 133 L.Ed.2d 119.

a claim, regardless of the face value of the plaintiff's complaint.[16] The only way a plaintiff could then effectuate a remand to state court on amount in controversy grounds would be to show, as a matter of law, it is certain that his recovery will not reach the jurisdictional minimum for removal.[17] This is not a burden-shifting scheme; the plaintiff must make all information known at the time the original complaint is filed.[18] Examples of this include situations in which the plaintiff's original complaint (as filed in state court) arises under a law capping recovery of damages below the jurisdictional minimum or, as in this case, if a plaintiff is suing on an insurance policy, and the policy itself limits recovery to an amount below the jurisdictional minimum.[19]

In the absence of formal allegations in the plaintiff's complaint as to the sum or value in dispute, the jurisdictional amount in controversy requirement may be met where the amount adequately appears from other allegations in the complaint.[20] The court may also look beyond the complaint and examine the entire record, as of the date of removal, to appraise the monetary value of the claim.[21]

In this case, Wells Fargo submits an affidavit of its attorney in support of its Notice of

---

[16] *Id.*

[17] *Id.* at 1412.

[18] *Id.*

[19] *Id.* at 1411.

[20] *Id.* at 57.

[21] 14C Wright and Miller, *supra* n. 27 § 3725 at 73.

Removal. Mr. Murray's affidavit appraises the value of his attorney's fee portion of the request for relief, and estimates that therefore the cost of litigation *could* be in excess of $75,000.00. Plaintiff's Motion to Remand also was submitted to the Court with an affidavit of his counsel, swearing that total damages would not sum more than $74,999.00.

Wells Fargo bears the burden of proving by a preponderance of the evidence that damages would exceed the minimum jurisdictional amount in controversy. Any doubts must be resolved against removal. The maximum actual damages allowed by the policy appear on the policy's face to be in the range of $36,000.00. The only other evidence before the Court shedding light on the amount in controversy is contradictory affidavit evidence from the parties' attorneys. The Plaintiff's evidence regarding amount in controversy, as he is the master of his suit, must be given more weight in the context of the presumption against removal. Thus, Wells Fargo has failed to overcome its burden.

## Conclusion

Accordingly, the Court is of the opinion that Plaintiff's Motion to Remand to the 37th Judicial District of Bear County be GRANTED.

It is so ORDERED.

Signed this 8th day of January, 2007.

_____
ROYAL FURGESON
UNITED STATES DISTRICT JUDGE

R:\Meghan\Civil\Galvan v. Rail Head\Order Granting Motion to Remand.wpd